THE FOLLOWING IS THE PDF OF AN OFFICIAL TRANSCRIPT.

OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE OFFICIAL

COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A PERIOD OF 90

DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED TRANSCRIPT BY THE

DOCKET ENTRY NUMBER, REFERENCING PAGE AND LINE NUMBER, ONLY AFTER

THE COURT REPORTER HAS FILED THE OFFICIAL TRANSCRIPT; HOWEVER, YOU

ARE PROHIBITED FROM ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY

DOCUMENT FILED WITH THE COURT.

1                        UNITED STATES DISTRICT COURT
                      FOR THE NORTHERN DISTRICT OF GEORGIA
2                              ATLANTA DIVISION

3

4    PASCHA THOMAS,                    )
                                       )
5         PLAINTIFF,                   )
                                       ) DOCKET NO. 1:20-CV-02317-MHC
6         -VS-                         )
                                       )
7    CITY SCHOOLS OF DECATUR,          )
                                       )
8         DEFENDANT.                   )

9

10                 **TRANSCRIPT OF TELEPHONE CONFERENCE**
                 **BEFORE THE HONORABLE MARK H. COHEN**
                   **UNITED STATES DISTRICT JUDGE**
11                        **MARCH 16, 2023**

12

**APPEARANCES:**
13

ON BEHALF OF THE PLAINTIFF:
14
          VERNADETTE RAMIREZ BROYLES, ESQ.
15        ERNEST TRAKAS, ESQ.
          CHILD & PARENTAL RIGHTS CAMPAIGN
16

17   ON BEHALF OF THE DEFENDANT:

18        JILL THRASHER YOUNG, ESQ.
          KERI PATTERSON WARE, ESQ.
19        ROBERT EARL WILSON, ESQ.
          WILSON, MORTON & DOWNS, LLC.
20

21

22   **STENOGRAPHICALLY RECORDED BY:**

23

                         PENNY PRITTY COUDRIET, RMR, CRR
24                          OFFICIAL COURT REPORTER
                         UNITED STATES DISTRICT COURT
25                            ATLANTA, GEORGIA

1              **(PROCEEDINGS HELD VIA TELEPHONE, ATLANTA)**

2              THE COURT:  All right.  This is Judge Cohen on the line.

3              This is the case of Pascha Thomas v. City Schools of

4    Decatur, et al.  Civil Action 20-CV-2317.

5              Will counsel for plaintiff please identify themselves.

6              MS. BROYLES:  Good afternoon, your Honor.  This is

7    Attorney Vernadette Broyles.

8              MR. TRAKAS:  And I'm on as well, your Honor, Ernie

9    Trakas in St. Louis.

10             THE COURT:  All right.  Good afternoon, counsel.

11             Who is here on behalf of the defendants?

12             MS. YOUNG:  Good afternoon, your Honor.  This is Jill

13   Young.  And I have with me Keri Ware and Bob Wilson, all here on

14   behalf of the defendant.

15             THE COURT:  Okay.  Thank you, counsel.

16             I would ask whoever speaks during this call, if you

17   would continue to introduce yourself so the court reporter knows

18   who's speaking, I would appreciate it.

19             This is a conference call that was requested by counsel

20   given my order on the motions to seal back in February.  And so I

21   guess I'll open it up.

22             But let me just briefly state that I think when you read

23   my order you know where I was coming from.  And that is that I'm

24   not going to approve the sealing of entire documents when the

25   majority of those documents do not include otherwise confidential

1  or private information.  And the last time around you see I just

2  did a motion to seal and it seemed like, you know, the defendants

3  got it.  So they went through and redacted in a very limited

4  manner information in the two documents that, you know, was either

5  FERPA related or dealt with parties that are not present in the

6  case whose privacy interests need to be protected or, you know,

7  medical issues or something like that.  So I don't think it's that

8  difficult frankly.

9       I mean, it's difficult in that you're the ones who have

10 to go through it and not me, but that's the way it's supposed to

11 be.  It's not my job to go through the documents line by line and

12 determine what needs to be redacted.  I mean, you're all supposed

13 to be able to do that.

14      So I'll be more than happy -- if you've got a question

15 about any specific document or some types of categories of matters

16 that you want to talk about, I'll be more than happy to talk about

17 it.  But what I don't want to go through, and I hope you don't

18 want me to go through, is pulling up, you know, the statement of

19 material facts and going through one by one.  I do not want to do

20 that.

21      So let me -- is it the plaintiff or the defendants or a

22 combination of both who want to talk about it?

23      MS. YOUNG:  Your Honor, this is Jill Young.  And I

24 thought we would open it up because it really is defendant's

25 primary concern and -- or have the bulk of the redactions that are

```
1   required.  I think there's 14 full deposition transcripts, a
2   number of declarations and then, of course, the briefs and the
3   statement of material facts.
4          So, first of all, I just want to thank you for making
5   time to listen to us today, your Honor.  And as an initial matter,
6   as you had previously alluded to, I think I can speak for both
7   parties that we don't disagree with or challenge the rationale
8   that's underlying the Court's order or have any issue with that.
9   However, because CSD is an educational agency that risks federal
10  funding as well as civil rights complaints for any violations of
11  FERPA, we requested this conference call to seek clarity from the
12  Court to ensure that we're both complying with FERPA and the
13  Court's order.
14         So the Court has ordered the parties to redact only
15  portions of their respective briefs, statement of facts,
16  declarations and full deposition transcripts which reference
17  educational records protected by FERPA, medical records, employee
18  incident reports or other personally identifiable information
19  about non-parties which were not previously revealed on the public
20  record.  And FERPA requires CSD to redact education records
21  directly related to specific students and any testimony regarding
22  the same.
23         What we don't want to happen is for the defendants to
24  redact everything it deems an education record or testimony
25  regarding the same in attempting to comply with FERPA but then
```

1  run afoul of the Court's order by reacting too much or

2  alternatively only selectively redacting in an attempt to comply

3  with the Court's order --

4           (Clarification by the court reporter)

5           MS. YOUNG:  I'll start over from that point.

6           What we don't want to happen here is for defendants to

7  redact everything that it deems an education record or testimony

8  regarding the same in an attempt to comply with FERPA but run

9  afoul of this Court's order by redacting too much or alternatively

10 only selectively redacting in attempt to comply with this Court's

11 order but violate FERPA.

12          So for defendants to make multiple attempts at redacted

13 filings is not a productive use of this Court's time, we're

14 seeking clarity on the front end to avoid any conflicts in the

15 future on that matter.

16          THE COURT:  And maybe this will be helpful to you.  And

17 maybe I'm looking at it too simplistically.  So I think in order

18 to in y'all's mind try to comply with FERPA, you've decided more

19 is better than less.  So you basically thought, well, because this

20 whole case involves two students, you know, it's all protected but

21 it isn't.

22          This case involves an alleged incident that occurred at

23 a school, okay?  The educational records of those two students

24 involved are absolutely protected under FERPA.  No question about

25 that.  But education records are different than a social worker or

1  a DFCS worker's testimony about what person A may have said to

2  person B.  I don't consider that an educational record.

3          Now, if somebody goes to the school and gets records of

4  a student and discusses those records, yeah, those are protected

5  under FERPA.  So, I mean, when you're dealing with deposition

6  number one, whoever it is, the lion's share of that deposition is

7  not going to be a FERPA protected series of information I don't

8  believe.  Tell me where I'm wrong there.

9          I mean, if the witness is talking about specific

10  records, educational records of Jane Doe or the boy who allegedly

11  took the action against her, you know, they're educational records

12  that are maintained by DeKalb County, I get you, those are

13  protected by FERPA.  Anything related to that, anything related to

14  Jane Doe's, you know, how did this affect her ability schooling-

15  wise in her new school, did her grades go up and down, you know, I

16  get you, that's protected by FERPA.  But, you know, there's a lot

17  of other stuff that's in these depositions and in these statement

18  of material facts that has nothing to do with that.

19          So that's where I'm kind of -- if you can give me, okay,

20  you know, here's one where we're not sure about, I'll be able to

21  maybe direct you.  But I just -- maybe I'm missing something, but

22  I just don't see where this is that big of a problem.

23          MS. YOUNG:  So, your Honor, for the purposes of today's

24  call we have two overarching questions that we're seeking clarity

25  on.  The first is how broad or narrow is the Court's order to

1  redact only information that has not been previously revealed on

2  the public record, the language of the order?

3        And as you stated earlier, FERPA requires a broad

4  interpretation of what is a protected education record, but the

5  Court's order points out that requests to seal have to be drawn as

6  narrowly as possible.  So we do have a problem, a bit of a tension

7  there between a broad versus narrow interpretation.

8        The second question that we're seeking clarity on is is

9  it the Court's position that plaintiff has waived FERPA protection

10  for any information regarding the subject incident and its

11  aftermath or only the specific FERPA protected information that

12  plaintiff has chosen to reveal in her complaint?

13        From CSD's perspective, if CSD is required to redact

14  FERPA protected information that has not been specifically

15  revealed in plaintiff's complaint, any testimony regarding the

16  incident and response and summary of the same that provides any

17  additional or different facts than exactly what has been made

18  public by FERPA is FERPA protected information that would have to

19  be redacted.  Practically speaking, this would result in a large

20  portion of the majority of the deposition transcripts being

21  redacted.

22        And, of course, if that's not the Court's intention,

23  that's not what CSD wants to do.  For example -- and I also, like

24  you, do not want to go line through line and go through all the

25  statements of material fact in all the depositions, but I would

1   like to set forth a few examples that might show this tension.

2          So, for example, plaintiff's complaint have allegations

3   about her November 17th, 2017, report of sexual assault and

4   meetings with Oakhurst staff on November 17th and December 8th.

5   Deposition testimony from CSD's witnesses and Ms. Thomas herself

6   provide additional facts regarding discussions in these meetings.

7   To only redact testimony that doesn't exactly mirror the

8   information that has been revealed by plaintiff in her complaint

9   would require defendants to redact most of this testimony.

10          And the same would apply to redacting defendant's

11   statement of material facts in their brief.  Any summary of

12   additional conversations that's not specifically included in

13   plaintiff's complaint would have to be redacted.

14          Any documents attached to depositions as exhibits about

15   this incident are FERPA protected student records.  Any statements

16   about the incident, e-mails about the incident, those are all

17   FERPA protected student records that are directly about a student.

18   Of course, that wouldn't include any publicly-available documents

19   that are attached like CSD's policies and some other public

20   documents that are exhibits to those depositions.

21          Another example, in the deposition of Robin Dickerson,

22   who is CSD's homelessness liaison, almost all of her testimony is

23   about Jane Doe's McKinney-Vento status and services offered under

24   McKinney-Vento.  It's been alluded to in some of the

25   publically-availably filings that Ms. Thomas had experienced

1  homelessness at some point.  But Jane Doe's McKinney-Vento status

2  and services CSD offered is FERPA protected information.  And a

3  large portion of Ms. Dickerson's deposition would, therefore, have

4  to be redacted.  In fact, plaintiff's complaint makes no reference

5  whatsoever to Ms. Dickerson.  So any testimony from her regarding

6  her involvement with plaintiff is not something that's been

7  previously revealed.

8          In regards to some of the medical records, plaintiff

9  has alleged that Jane Doe was examined by Dr. Julie Medlin and

10 Dr. Nancy Aldridge --

11          (Clarification by the court reporter)

12          THE COURT:  It sounds like you're reading something and

13 that's fine, but the court reporter's fingers are flying off

14 the machine right now.

15          MS. YOUNG:  Okay.  Where do you need me to back up to?

16          (Record read back by the reporter)

17          MS. YOUNG:  In regards to the medical records the

18 plaintiff has alleged that Jane Doe was examined by Dr. Julie

19 Medlin and Dr. Nancy Aldridge and provided their general

20 diagnoses.  However, virtually the entirety of those deposition

21 testimonies would have to be redacted if they're containing

22 FERPA protected information, testimony regarding their medical

23 examinations of Jane Doe, medical records and a DFCS history that

24 this Court has separately required to maintain confidential --

25          THE COURT:  Let me stop you there.  There is no question

1  that I'm fine with you redacting medical records and information

2  that was in the DFCS records.  There's no question about that.  So

3  I think you are really -- what you are doing here is -- I know

4  what you're saying, and I did say this for a reason.  And that is

5  the lawsuit itself was not filed under seal, was not requested to

6  be filed under seal.  It was filed in public.

7          So, you know, there was one argument that was made

8  during all this and that is that, well, gee, you know, the people

9  who -- well, the parents of other students at the school, you

10  know, are going to figure out who Jane Doe and the young boy are.

11  Well, I bet you that cat's been out of the bag for, you know,

12  years at this point given this lawsuit.  I mean, it's on the

13  public record.  I'm sure a whole bunch of people in the school

14  know what happened and who was involved.  But my point in saying

15  that is that to the extent that both sides now want to just seal

16  this entire case, it's a little too little too late.

17          Now, that said, I mean, there's nothing that I said in

18  this order that indicates that just because Ms. Thomas alleges --

19  let's just say that, you know, on such and such date my daughter

20  had a medical exam.  That doesn't mean I meant that the medical

21  exam is open.  Of course not.  It isn't.  So, I mean -- let me

22  finish.

23          So, I mean, the medical records are obviously protected.

24  And DFCS records are protected, which is why I reviewed them in

25  camera.  So let's not use the line about how, well, because I

1   indicated that some things were revealed in the complaint and in

2   public filings mean that, well, gee, Judge, you must have meant

3   that we now have to open all the medical records.  No, I didn't.

4   I didn't mean that at all.  So let's bring this down to some sense

5   of reality here.

6        MS. BROYLES:  Your Honor, is Vernadette Broyles.

7   May I briefly make one observation from the plaintiff's side and,

8   of course, allow defense counsel to continue her argument.

9        The plaintiff is not in any way disagreeing with the

10  Court's order.  In fact, we didn't request this conference.  We

11  thought that the Court's order was appropriately balanced.  So we

12  understood that we had to be a part of this because, obviously, it

13  would be pro se without us.  So I just wanted to indicate that

14  because you said "the parties."  I think there was some confusion

15  as to where we stood.  That's all I wanted to say at this moment.

16       THE COURT:  Well, I appreciate that, Ms. Broyles.

17  That's helpful.  I'm glad you said that.

18       And that's an interesting point from the defendant's

19  [sic] perspective.  So, I mean, it seems to me, you know, your

20  statement about how, well, Judge, are you ruling that the

21  plaintiff has waived, you know, her rights under FERPA, I'm not

22  ruling anything like that.  But what I'm trying to do is to

23  basically indicate to you that I just think -- and, look, I

24  appreciate that the school system is paranoid about violating

25  FERPA.  I get it.  I really do.  You know, in another life I did

1  some education law.  So, I mean, I know what you're talking about

2  here.  But, I mean, let's be somewhat reasonable here.

3       I mean, just because a witness is testifying in a

4  deposition and the deposition is 100 pages and there is -- there

5  are questions in the deposition that relate to medical history or

6  educational -- or grades or something that happened in a classroom

7  on a particular date where you can, you know, maybe redact part of

8  that that would fall under the educational record, I mean, you can

9  do that.

10       I mean, what I'm basically telling you is to the extent

11 that the City Schools of Decatur are going to argue to me that

12 this is one big FERPA file and that we have to redact it all,

13 that's not going to hold water with me.  And I've already made

14 that pretty clear in the order.

15       So, you know, to the extent that you have some "tension"

16 with the federal government now, I don't see where you have it.  I

17 mean, is there -- are the feds coming in because of this case and

18 threatening to pull funds away from the City Schools of Decatur

19 because I've ordered this?

20       MS. YOUNG:  So a -- this is Jill Young again.

21       A few things, your Honor.  First, the district is not

22 seeking everything to be under seal.  I want to be clear about

23 that.  We're not in disagreement with the order, we're just trying

24 to seek some clarity to make sure that we're complying correctly.

25       We also are not suggesting that the entirety of the

1  medical records should be opened, or that the depositions should

2  be opened.  I just want to be clear that basically the entirety of

3  Dr. Aldridge and Dr. Medlin's depositions will be redacted because

4  it is almost entirely testimony about how they examined Jane Doe.

5  And I want to make sure that that's what the Court intended to

6  occur, for that to all be redacted.

7          THE COURT:  Let me ask you -- and I don't have the

8  deposition in front of me.  Let me guess that the first part of

9  the deposition was asking maybe about the background of the

10 physician, where he went to school, what his expertise is.  Is

11 that possible?

12         MS. YOUNG:  Yes, your Honor.  And we would agree that

13 that doesn't need to be redacted.  And that was the plan, we just

14 want to make sure that we're all on the same page, that anything

15 that's not specifically about the student would not be redacted,

16 but that really is going to be, you know, 10 pages that aren't

17 redacted and 200 pages that are.

18         THE COURT:  Well, I mean, if that's what you're telling

19 me, that's what you're telling me.  I haven't -- I don't have the

20 200 pages in front of me, so it's hard for me to tell you that on

21 page 146 that somebody didn't ask a question that really there's

22 no grounds for redacting it.  I mean, I don't know.

23         Look, I'll tell you this, I am not going to spend

24 100 hours going through every redaction to see if it's justified

25 or not.  I mean, if plaintiff has an objection to a particular

1  redaction, I guess you can talk to plaintiff about it, plaintiff's

2  counsel about it, and try to come to some resolution about it.

3  And then if you can't, you can then call me up, and I'll rule on

4  that specifically.  But I'm just trying to provide you some

5  general guidance.

6          I mean, it's -- yeah.  I mean, if a particular

7  deposition is basically a medical deposition in which, you know,

8  90 percent of the deposition is talking about an examination of

9  someone and their findings, I absolutely agree with you that that

10 all that gets redacted.  But --

11          MR. TRAKAS:  Judge, can I --

12          THE COURT:  Go ahead.

13          MR. TRAKAS:  Can I weigh in for a brief moment, Judge,

14 if you don't mind.  It's Ernie Trakas.

15          THE COURT:  Okay.

16          MR. TRAKAS:  I agree with you 100 percent pretty much,

17 Judge, in terms of your ruling, your order.  I believe, with all

18 due respect to defense counsel, they're conveniently conflating

19 the term "record" with "information," starting with FERPA.  All

20 that this Court needs to be concerned about is what qualifies as

21 personally identifiable information, student's name, ID number,

22 address, other type of identifiers perhaps that could allow

23 someone to identify that particular student.  Beyond that, FERPA

24 doesn't protect information.  That information is readily

25 available and can be disclosed without any concern because there's

1  no way of linking it to the identity of anyone.

2        So I think what's going on here is an effort, with all

3  respect, Judge, to limit the amount of information that this Court

4  has before it in order to make a conscientious and thorough

5  decision.

6        With respect -- so, for instance, like the reference to

7  McKinney-Vento.  Once personally identifiable information is

8  removed, what difference does it make about testimony concerning

9  processes and programs that are available to homeless individuals.

10 Again, there's no way of linking that in any way, shape or form to

11 anyone involved in this case or any student.  So I think this is a

12 bit of an overreach on the defendant's part, your Honor.

13       And also, as you've said, much of this is already out in

14 the public domain.  So to the extent that it's too little too

15 late, I agree with you.

16       And then with respect to medical records, Judge, using a

17 similar type of protected statute, HIPAA, same thing applies here.

18 All that's protected is information that can link a specific

19 patient to either the record or the information contained therein.

20       So, again, once that information, meaning personally

21 identifiable information, or so-called identifiers that are

22 specific enough that would enable someone to postulate about a

23 specific patient, other than that what an examination held or

24 which type of examination was conducted is fair game, I believe,

25 Judge, in terms of it's not reasonable to conclude that that

1   information can be linked to the identity of the patient.  And I

2   don't believe it's protected under HIPAA.

3          So I just wanted to make those points for the record and

4   for the Court, Judge.  And, again, thank you for taking the time

5   today.

6          THE COURT:  Mr. Trakas, the one thing I'll correct you

7   on is when you said one of the purposes of the defendants may be

8   to limit the information that comes before me, I'm going to have

9   all the information.  So, you know, I'm going to have all the

10  unsealed parts.  So you don't have to worry about that.  I mean,

11  that's not the issue here.  The issue is what gets filed on the

12  public docket.  That's the issue.  So I'm going -- it has nothing

13  to do with what I see.  I'm seeing everything.  Everything that's

14  filed under seal is unredacted, full depositions.  So I'm going to

15  have every single deposition with every single word unredacted.

16  This is about what gets filed on the public docket.

17         So, you know, I have an obligation that the Eleventh

18  Circuit has put me on that basically says that the default in

19  terms of the docket for a case that's filed on the public docket

20  is the information's public.  And the exception is information

21  that can be filed under seal which has a rationale for not being

22  on the public docket, that's what this is all about.  It has

23  nothing to do with what I see.  So I wanted to make that clear.

24         MR. TRAKAS:  Okay.  I appreciate that, Judge.  And thank

25  you for the clarification.  But, again, you were right in your

1  earlier statement that if defendants believed that certain

2  information is protected and must be redacted, then that should be

3  a discussion between them and us on an item-by-item basis, for

4  lack of a better way to put it.  If we can't reach a consensus or

5  agreement, then we bring it back before you.  I don't think a

6  wholesale order requiring entire depositions, for lack of a better

7  way to put it, to be redacted is appropriate.

8          MS. WARE:  This is Keri --

9          THE COURT:  Well -- go ahead, Ms. Ware.

10         MS. WARE:  Thank you, your Honor.  I don't want to

11 interrupt you if you wanted to respond.

12         THE COURT:  Go ahead.

13         MS. WARE:  First of all, I want to say that we disagree

14 with Mr. Trakas's characterization of what FERPA requires as far

15 as only identifying information such as names and student ID

16 number.  It requires protection of a lot more than that.  However,

17 most of the information that we are talking about in this case has

18 to do with the plaintiff and her child or children.  And so if

19 what Mr. Trakas is saying is he's fine with us only redacting

20 anything that would specifically identify her, such as her, you

21 know, student ID number, or, you know, name, which shouldn't be --

22 we would have to redact that obviously from any deposition

23 transcript, if that is the position they're taking, then I think

24 our job in redacting is much more clear.

25         So -- but I think that is where our concern lies, is we

1  see that it requires more than that.  But if Mr. Trakas and

2  Ms. Broyles want to say that they are fine with us only redacting

3  her name and personal identifiers and that we can leave in the

4  record, you know, diagnoses by the doctors even though -- as long

5  as it doesn't have her name attached, then that makes our job and

6  the delineations much more clear.

7                  MR. TRAKAS:  May I respond, your Honor?

8                  THE COURT:  Sure.

9                  MR. TRAKAS:  Thank you.

10                 For starters, it goes beyond just name and ID number,

11  what I called identifiers.  So race, sex, other type -- nicknames.

12  And these identifiers, Judge, are well-known.  It doesn't take

13  much to do the research and identify what's been determined as

14  identifiers, my term.  So it's beyond just a name and an address

15  or an ID number.  But, again, it's information that can reasonably

16  be used to make a conclusion about the identity of the patient or

17  the student.

18                 And so -- and then with respect to using Ms. Ware's

19  example, the medical records, my statements, Judge, were not just

20  pertaining to the plaintiff.  It's pertaining to all educational

21  records that are going to be utilized in this case, whether it's

22  to the plaintiff or to the alleged perpetrator.  So, again, it

23  goes back to the personally identifiable information and what

24  that's comprised of in terms of clear items like his name, ID

25  number, social security number if they have it, nicknames, age,

sex, race, et cetera, but also other identifiers so-called.  But

beyond that, I don't know that it qualifies as protected under

FERPA.

              Thank you, Judge.

              THE COURT:  Well, yeah.

              Let me ask you this, Ms. Ware, and this is what I

normally do, and y'all know this, in discovery disputes.  And that

is, you know, I require the lawyers to attempt to get together and

work out some type of solution before they come to me with we've

done, you know, 80 percent of this but we're still stuck on this

20 percent.  Why shouldn't I do that here?

              I mean, if, in fact -- wait a second.  If, in fact, the

overwhelming majority of the concern the defendants have is

dealing with Jane Doe's personal information and wanting to be

overly protective of what is on the public docket or not, and

you've got Jane Doe's -- I mean Ms. Thomas's lawyers basically

saying we are not in favor of this broad redaction on the public

docket for items we don't believe are covered under any legitimate

privacy interest, then it seems like y'all can get together and

figure out what to do.

              Why is that a wrong thing to be able to do, Ms. Ware?

              MS. WARE:  So I don't disagree with you, your Honor.

But to be clear, we did have a conference call with plaintiff's

counsel prior to reaching out to the Court to let them know that

we felt like we needed some clarity from the Court.

1          And their response basically was, well, you know, we

2   think that the Court order is very clear and so, you know -- what

3   Ms. Broyles said today.  And so I don't -- if what you want us to

4   do is redact according to the guidelines that Mr. Trakas has

5   outlined, that's fine.  What we were trying to avoid is getting

6   into, you know, a dispute -- line-by-line dispute with plaintiff's

7   counsel over what should be redacted and what shouldn't or

8   piecemeal redacting things; well, one party likes this fact, one

9   party doesn't like that fact, and those kind of things.  So we

10  were seeking some clarity.

11          I also would like to point out that while the plaintiff

12  and her counsel are welcome to waive her HIPAA or FERPA

13  protection, they cannot waive the protection -- the FERPA

14  protections of the perpetrator who is a non-party to the case.

15  And I disagree with Mr. Trakas's characterization that all we

16  would have to do is to redact, you know, anything that would

17  identify him.  If there are communications about him with his

18  parents, testimony about what was discussed with his parents,

19  testimony about private matters that were going on in his home

20  ████████████████████████████████████████████████████████████

21  should be opened to the public, and we have an obligation to

22  protect those.

23          MR. TRAKAS:  May I respond, your Honor?

24          THE COURT:  Sure.

25          MR. TRAKAS:  Thank you.

1          As you would expect, I disagree with Ms. Ware's

2    characterization of their reach of FERPA.  Again, if those records

3    that she's speaking about were subpoenaed, the law simply requires

4    that they be redacted to prevent the release of personally

5    identifiable information, whatever that means, in terms of one of

6    the items I've just gone over.  Beyond that, there's no way to

7    associate any of the information contained in the document or the

8    record to any specific individual.  It has -- it's beyond the

9    scope of the protections envisioned by FERPA, or HIPAA for that

10   matter.

11          Thank you, Judge.

12          THE COURT:  Well, here's what I want --

13          MS. BROYLES:  Your Honor, this is Ms. Broyles.

14          THE COURT:  Go ahead, Ms. Broyles.

15          MS. BROYLES:  May I add one additional comment?  I

16   didn't mean to step on the Court.

17          THE COURT:  Go ahead.

18          MS. BROYLES:  One other thing I think if the -- can you

19   hear me, sir?

20          THE COURT:  Yes.

21          MS. BROYLES:  One other thing that's important to keep

22   in mind is that there are standing orders in place concerning the

23   DFCS records, the police records, the medical records.  I believe

24   also education records, if I remember correctly.  But certainly

25   those last three are very, very vivid in my mind.  And I believe

1    that those orders continue to remain in effect, number one, which,

2    you know, definitely gives some -- gives guidance and clarity.

3          The other thing, too, is I dispute the characterization

4    that plaintiff's counsel is willing to waive our client's HIPAA

5    and FERPA protection.  That's not the case.  It's just that we do

6    not interpret as broadly as the defendants what those protections

7    entail.  We feel closer to the Court, that they were being not so

8    onerous as to make it difficult to understand and to be able to

9    correctly redact.  So I want to be clear on those two things.

10         THE COURT:  All right.  Let me say one thing about what

11   you've said that may not be completely accurate.  And that is,

12   you're right, anything that I've already done with respect to the

13   police records and the DFCS records absolutely carries over.  No

14   question about it.

15         Now, in my standing order, you know, I make it very

16   clear that whatever protective order that may have been entered by

17   the parties with respect to discovery documents, that does not

18   necessarily apply when you're filing motions for summary judgment.

19   So, you know, under the local rules in my standing order, just

20   because something is protected under the protected order, that

21   doesn't necessarily carry through filing of motions, which is

22   why motions to seal then have to be filed because then I've got to

23   make a determination whether there's justification for sealing it

24   at that point.  So I just want to make that clarification.  But,

25   otherwise, I understand your point, Ms. Broyles.

1          Let me say this, because I understand there is a dispute

2    between the parties as to what the scope of FERPA is and the scope

3    of maybe what other privacy interests there may be.  But, I think,

4    rather than continuing to bandy this about in generic terms, what

5    I would suggest is that the defendants go ahead and redact, you

6    know, the portions of the -- of their statement of undisputed

7    facts that they believe are legitimately redacted given my last

8    order, you know, redact whatever in the brief and I -- to me the

9    brief has got to be the easiest thing to do.  I mean, as I

10   indicated, I mean, your argument and citation of authority section

11   should not be redacted for the most part.  It's only references

12   to specific facts that may be protected under FERPA pursuant to

13   medical -- a medical confidentiality rationale or pursuant to

14   personally identifiable information.  So, I mean, the brief

15   shouldn't be an issue.

16          The depositions, I get it, you know, some of them may

17   have more redactions than others, but I guarantee you that some

18   of those 14 depositions should not have a lot of redactions.

19          And the plaintiff's response to defendant's

20   interrogatories, I mean, it's kind of the same thing with

21   respect to the brief.  I mean, some stuff may be redacted, others

22   won't.

23          But why don't defendants go ahead and prepare their

24   proposed redactions, let the plaintiffs see -- let the plaintiff

25   see them, see if there's any objection.  And then if there's any

1  issue remaining for me, let's have another conversation.  How's

2  that?

3        MS. BROYLES:  Your Honor, this is Ms. Broyles speaking.

4  That strikes me as sensible from our perspective.

5        THE COURT:  Ms. Ware.

6        MS. YOUNG:  We don't have any objection to that

7  approach, your Honor, if that's how you want us to approach it.

8        THE COURT:  Yeah.  That's how I want you to approach it,

9  which is kind of -- which is, frankly, you know, in -- I don't

10  know how many cases I've had here in the last eight-and-a-half

11  years, but whenever I've had an issue about sealing, and I haven't

12  had that many but I've had some, that's what's happened honestly.

13  I don't usually get on the phone until there's been kind of a

14  sharing of proposals back and forth, and then they say, okay,

15  well, we've -- we've got, you know, 12 questions that we need to

16  run by you, Judge, for you to decide.  I mean, that's how it's

17  worked before.

18        MS. WARE:  We're happy to follow that process, if

19  that's how you would like us to handle it.  Like we said at the

20  beginning, the point of this conversation was really to get

21  clarity from the Court.  Honestly, when this conversation opened,

22  we weren't aware that plaintiff took such a narrow view of FERPA.

23  We had had a conversation with them a week or so ago and that was

24  not part of the discussion.  But it's now apparent that there is

25  a divergent view on it, and so I think your approach is a liked

1   one and we will follow it.

2           THE COURT:  I appreciate that.  Thank you.

3           Anything else on behalf of plaintiff?

4           MS. BROYLES:  Mr. Trakas, is there anything else you

5   want to add?

6           MR. TRAKAS:  No, Judge.  Thank you for the time.

7           THE COURT:  All right.  Thank you.  Anything else -- I'm

8   sorry, Ms. Broyles, do you have something?

9           MS. BROYLES:  No, that was it.

10          THE COURT:  Ms. Ware, anything else on behalf of the

11  defendants.

12          MS. WARE:  Just one question.  Our deadline to have

13  these redactions turned in is I believe Monday.

14          THE COURT:  I'll give you more -- how much more time do

15  you need?

16          MS. WARE:  Another 30 days given that we didn't start --

17  we've only partially started redacting.  But, you know, in light

18  of the exchange, that may need to go back and forth.

19          THE COURT:  I don't have a problem with that.  Why

20  don't you prepare a consent order, and I'll sign it.

21          MS. WARE:  Okay.  Thank you.

22          THE COURT:  Okay.  All right.

23          MS. BROYLES:  Thank you, your Honor.

24          THE COURT:  Thank you all very much.  Have a good

25  weekend.  Take care.

1          (PROCEEDINGS REPORTED WERE CONCLUDED AT 2:43 P.M.)

2                         - - - - -

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3   UNITED STATES DISTRICT COURT

4   NORTHERN DISTRICT OF GEORGIA

5

6       I do hereby certify that the foregoing pages are a true and

7   correct transcript of the proceedings taken down by me in the case

8   aforesaid.

9       This the 7th Day of April, 2023.

10

11

12

13

14            _____

15                    PENNY PRITTY COUDRIET, RMR, CRR
                       OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```